UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| Steven B., <br>   Plaintiff, <br><br> v. <br><br> Frank Bisignano, Commissioner of <br>   Social Security Administration, <br>   Defendant. | C.A. No. 1:25-cv-00292-AEM |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

  Plaintiff Steven B. suffers from severe impairments of depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), borderline personality disorder, and substance use disorder. ECF No. 8 at 24. The Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denied Steven's claims for Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). *Id.* at 19-33.

  With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Steven is not disabled within the meaning of the Act.

I. BACKGROUND

A. Procedural History

Steven filed an application for SSDI on January 6, 2023, alleging disability beginning on September 1, 2022. ECF No. 8 at 22. His claims were denied initially on March 20, 2023 and again on reconsideration on June 22, 2023. *Id.* Steven requested an Administrative Hearing, which was held on January 30, 2024 before Administrative Law Judge Paul Goodale (the "ALJ"). *Id.* at 42-75. At the hearing, Steven was represented by counsel and testified, and Vocational Expert ("VE") Kenneth Smith testified as well. *Id.*

Thereafter, the ALJ issued a decision to Steven on May 1, 2024 (*id.* at 19-33) denying his claim, and the Appeals Council denied Steven's request for review on April 18, 2025 (*id.* at 6-8). Steven timely appealed by filing his Complaint on June 20, 2025, seeking to reverse the decision of the Commissioner. ECF No. 1. On November 10, 2025, Steven filed Plaintiff's Motion to Reverse the Decision of the Commissioner. ECF No. 12. On December 31, 2025, Defendant filed Commissioner's Motion to Affirm His Decision. ECF No. 14. Steven did not file a reply.

B. Claimant Background

Steven suffers from several severe impairments, including depressive disorder, anxiety disorder, PTSD, ADHD, borderline personality disorder, and substance use disorder. ECF No. 8 at 24. Steven has several other impairments that do not rise to the level of "severe" impairments under the Act, including obesity, chronic obstructive pulmonary disease ("COPD"), lymphocytosis, anemia, and a prior hip fracture, for which he underwent surgery. *Id.* at 24-25.

Prior to the alleged date of onset, Steven worked several full-time jobs. ECF No. 8 at 50-56. Most recently, Steven worked for four years at a call center scheduling appointments for medical testing for hearing aids. *Id.* at 50. Prior to that, he worked for thirteen years providing

residential care for people with developmental disabilities. *Id.* at 51. He also worked for shorter durations of time at a convenience store and for a smaller company also providing residential care for disabled individuals. *Id.* at 50, 52.

The record regarding Steven's severe mental health impairments and the limits they impose is conflicting. Steven testified that over the years, his mental health continued to decline. ECF No. 8 at 54-55. He testified that he has a hard time getting out of bed, performing basic hygiene, and overcoming suicidal ideations. *Id.* Additionally, he testified that he suffers from daily panic attacks and insomnia, both of which increased since he was involved in a motor vehicle accident in 2022 that caused his hip injuries. *Id.* at 55. He testified that he has received mental health services in various settings for several years but that despite his treatment, "even the simplest tasks seem very hard." *Id.* at 56-61.

Steven's medical records show that he was referred to a partial hospitalization program to address his mental health symptoms in October of 2022 due to possible suicidal ideations. *Id.* at 322. His mental status at the time of discharge revealed constricted mood, but otherwise benign results. *Id.* at 344-345. Thereafter, Steven was admitted to an inpatient treatment program for his mental health symptoms. *Id.* at 1991-99. After discharge, he started a course of intensive outpatient mental health treatment in January 2023. *Id.* at 1746. His mental status examination at the time of discharge from that outpatient treatment revealed benign results. *Id.* at 1744. Steven's records also denote he underwent a course of Transcranial Magnetic Stimulation to treat his depression; his mental status examination was again benign at the time of discharge. *Id.* at 2099-100. In December 2023, after ongoing outpatient treatment, Steven's treatment providers describe his mental status examinations to be within normal limits. *See, e.g.*, *id.* at 2252-54.

Despite these mental health impairments, the state agency consultants at the initial level opined that Steven could perform a range of sedentary work. ECF No. 8 at 86-88. State agency psychological consultant Dr. Clifford Gordon, Ed.D., noted that Steven had only "moderate limitations due to psychiatric issues." *Id.* at 85. Conversely, Amy Creegan, Steven's treating therapist, noted that Steven would be unable to maintain attention for two-hour segments, maintain regular attendance, complete a normal workday, perform at a consistent pace, interact appropriately with supervisors or co-workers, or deal with normal work stress. *Id.* at 2263. She indicated in her treatment records, however, that Steven's mental status is within normal limits. *See, e.g., id.* at 2252-54. Additionally, Steven himself reported that he prepares meals, manages his finances, grocery shops, socializes with others, and manages changes in routine. *Id.* at 247-51.

### C. ALJ Decision

The ALJ follows a five-step process in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at Steps One through Four, and the Commissioner bears the burden at Step Five. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003). The Court recounts below only the steps implicated in Steven's appeal.

Before proceeding to Step Four in the process, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is essentially a means to determine what limitations the impairment(s) impose on the claimant's ability to perform gainful work activity. *Id.* § 404.1545(a)(1). In other words, the RFC is the ALJ's determination of what a claimant can or cannot do. *See id.* In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.* § 404.1545.

Here, the ALJ determined that Steven had the RFC to perform medium work with the following limitations:

4

>the claimant can frequently stoop, crouch, crawl and kneel, can frequently climb ramps and stairs, and can occasionally climb ladders, ropes, and scaffolds; he should avoid concentrated exposure to extreme cold, and to workplace hazards such as dangerous machinery (excluding passenger motor vehicles) and unprotected heights. The claimant could do simple, routine, repetitive tasks, free of fast paced work requirements, involving only simple work-related decisions, with up to occasional changes in workplace settings; he could not do production rate or pace work such as assembly-line type work (i.e., outwardly paced, working in close tandem with coworkers), but could do individual table/bench work. The claimant could have occasional contact with the general public, and up to frequent but superficial (brief, perfunctory, routine) contact with coworkers.

ECF No. 8 at 27.

After the ALJ has determined the claimant's RFC, the claimant must establish that they cannot perform past relevant work. 20 C.F.R. § 404.1520(f). Here, at Step Four, the ALJ found that Steven was unable to perform past relevant work. ECF No. 8 at 32.

Finally, if the claimant is found to be unable to perform past work, the analysis proceeds to Step Five, in which the burden shifts to the ALJ to demonstrate that there are other jobs in the local or national economy that the claimant *could* perform. 20 C.F.R. § 404.1520(g). The ALJ will commonly ask the opinion of a VE at this step. If the claimant can do other work, they are not disabled and not entitled to SSDI. *Id.* The ALJ found here that Steven could perform the requirements of other occupations that exist in significant numbers in the national economy, including that of a laborer, counter supply worker, cleaner, or routing clerk. ECF No. 8 at 32-33. As such, Steven was denied benefits.

## II. STANDARD OF REVIEW

The Commissioner's findings as to any fact "shall be" conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, if after reviewing the record, the Court finds that the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the Court would have reached a contrary result as finder of fact. *Rodriguez Pagan v. Sec'y Health*

5

*& Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The determination of substantiality is based upon an evaluation of the record as a whole. *Frustaglia v. Sec'y Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); *Brown v. Apfel*, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), *aff'd*, 230 F.3d 1347 (1st Cir. 2000) (per curiam).

As such, the Court's role in reviewing the Commissioner's decision is limited. *Brown*, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. *Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), *report and recommendation adopted by text order*, (D.R.I. Mar. 31, 2022). The Court must, however, consider evidence detracting from evidence on which Commissioner relied. *See Wendy M. v. Bisignano,* No. CV 24-208MSM, 2025 WL 2237531, at *2 (D.R.I. Aug. 6, 2025) (citing *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986)), *report and recommendation adopted,* No. 1:24-CV-00208-MSM-PAS, 2025 WL 2662534 (D.R.I. Sept. 17, 2025).

### III. ANALYSIS

On appeal, Steven argues that the ALJ's determination of Steven's RFC was not based on substantial evidence because the ALJ "failed to adequately consider" the "waxing and waning" of mental disorders and "engaged in a classic form of cherry picking" and that the ALJ, thus, erred as a matter of law. ECF No. 12 at 7. The Commissioner responds that substantial evidence supported the ALJ's RFC determination. ECF No. 14 at 4.

Steven is correct that the ALJ must not "cherry pick" the evidence on which he relies. Indeed, the agency has instructed ALJs to consider "exacerbations and remissions" when evaluating mental impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(4)(a), and this Court itself has noted before that some impairments wax and wane. *See Cruz v. Astrue*, No. 11-638M, 2013 WL 795063, at *14 (D.R.I. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 802986 (D.R.I. Mar. 4, 2013). Despite this, the ALJ will not determine that a claimant is disabled solely because the claimant suffers from temporary mental setbacks. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(4)(a). Under the Act, the only impairments the ALJ must factor into a disability determination are those lasting or expected to last for "12 months without interruption or stopping." Social Security Ruling (SSR) 23-1p, 88 Fed. Reg. 76885-01, at *76886 (Nov. 7, 2023). It is the claimant who bears the burden of establishing the extent of their alleged limitations. 20 C.F.R. § 404.1545(a)(3); *Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020). And the deferential standard of review in these cases requires that the Court affirm the ALJ's decision if it is supported by substantial evidence. *See Rodriguez Pagan*, 819 F.2d at 3.

Here, like in many social security cases, there is conflicting evidence related to Steven's mental impairments. In fact, the ALJ spent several pages of his decision weighing the evidence from Steven's testimony at the hearing against his medical records, recounting and discussing Steven's medical records denoting his mental health treatment and related symptoms, and weighing the evidence related to Steven's participation in inpatient and outpatient programs against his progress and mental status examinations post-treatment. ECF No. 8 at 25-31. The ALJ carefully considered Steven's testimony regarding his symptoms but found that the "intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical

evidence and other evidence" presented. *Id.* at 28.  Moreover, the ALJ carefully explained why he found the findings of the state agency consultants at the initial level to be only partially persuasive and the opinion of Steven's treating therapist, Amy Creegan, to be unpersuasive. *Id.* at 31.  The ALJ did not accept any of the testimony or evidence wholesale but rather considered and weighed all the evidence when determining Steven's RFC. *Id.* at 31.

The ALJ explicitly and thoroughly acknowledged the downswings in Steven's mental health and concluded that "when not actively engaged in more intensive treatment, the claimant occasionally reported anxious or depressed moods," but that "more generally, the claimant's mental status examinations revealed benign results." *Id.* at 30.  As such, the ALJ determined that "the medical evidence [fell] short of demonstrating the existence of psychological symptoms and limitations that are so severe that the claimant cannot perform any work on a regular and continuing basis." *Id.*  Mindful that in the context of SSDI substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229), the Court finds that there is substantial evidence on the record to support the ALJ's determination that Steven is not disabled under the Act.

### IV.   CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) is DENIED and Commissioner's Motion to Affirm His Decision (ECF No. 14) is GRANTED.  The Clerk shall enter Final Judgment in favor of Defendant.

 /s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

March 13, 2026